13 N.J. Super. 149 (1951)
80 A.2d 309
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES LUSTIG AND ANOTHER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1951.
Decided April 18, 1951.
*151 Before Judges EASTWOOD, BIGELOW and FREUND.
Mr. Edward Cohn, Prosecutor of Union County, argued the cause for the respondent (Mr. H. Russell Morss, Jr., First Assistant Prosecutor, attorney).
Mr. Morton Stavis argued the cause for the appellants.
The opinion of the court was delivered by BIGELOW, J.A.D.
This is an appeal (by leave granted) from the denial of a motion to dismiss an indictment on the ground that the indictment fails to charge an offense. The State asserts that it charges the common law crime of incitement to a riot. The indictment in substance alleges that the appellants did unlawfully by speech and actions encourage and incite divers persons to unlawfully, riotously, and tumultuously assemble and gather together to disturb the peace of this State; and being so assembled and gathered together (the said divers persons) did then and there make great noises, riot, tumult and disturbance, and continued so to do for the space of one-half an hour and more, to the great terror and disturbance not only of the people of this State there inhabiting, etc.
The words in parenthesis are inserted by us, with the consent of the parties, in order to clarify the meaning of the indictment.
The first objection raised is that the indictment does not state the means employed or the manner in which the appellants incited the riot. The specification is unnecessary. 2 Hawkins, Pleas of the Crown, ch. 29, § 17. 1 Chitty Criminal Law 171 and 272; Rex v. Fuller, 1 Bos. & Pul. 180; 126 Eng. R. 847 (C.P. 1797).
Next and more serious, that the acts which appellants are charged with encouraging, are not necessarily criminal.
A riot is an unlawful assembly that has developed to the stage of violence. In State v. Butterworth, 104 N.J.L. 579; 58 A.L.R. 744 (E. & A. 1928), the late Justice *152 Kalisch carefully considered what constitutes an unlawful assembly. "At common law," he said, "any gathering together of three or more persons, with intent to disturb the public peace, accompanied by some overt act or acts to effect that intent, was an unlawful assembly. The character of the overt acts essential to manifest this intent was of various kinds, as is illustrated by the precedents of indictments. Thus, for instance, if those gathering were armed, or were conducting themselves in such a disorderly manner as to give firm and courageous persons in the neighborhood reasonable grounds to apprehend a breach of peace as a result thereof, such gathering would be an unlawful assembly." But Justice Kalisch was forced to admit "that the effort to give a satisfactory definition of what is an unlawful assembly meets with the same disappointing results as does the attempt to formulate a definition which would embrace all phases of fraud."
A riot is a disturbance of the peace by three or more persons unlawfully assembled together and acting in a violent and tumultuous manner. Cf. 1 Hawkins, Pleas of the Crown, ch. 65, § 1; 4 Blackstone Commentaries 146; Russell on Crimes (1910 ed.), 409; Wharton on Criminal Law (1932 ed.), § 1862.
Appellants contend that the indictment is fatally defective because it fails to allege that the appellants incited and encouraged three or more persons to act, or that they urged the "divers persons" to join themselves to others so that there would be at least three participants. We consider the point well taken for it is entirely settled that one or two persons acting by themselves cannot be guilty of a riot. The precedents clearly indicate that an indictment for rioting must charge that at least three persons participated. For a common law form of indictment for unlawful assembly, see State v. Butterworth.
Every fact or circumstance which is a necessary ingredient in the offense, must be set forth in the indictment. Thus in State v. Solomon, 96 N.J.L. 124 (Sup. Ct. 1921), *153 97 N.J.L. 252 (E. & A. 1922), the defendant was convicted of keeping for sale adulterated whiskey, in violation of a statute which limited the offense to liquor to be used as a beverage. Whiskey, if used at all, is almost always used as a beverage. So our Supreme Court considered that it should be presumed that the whiskey was intended for that purpose and that the indictment need not expressly allege the fact. But the Court of Errors and Appeals held to the contrary, that the omission was fatal and that the indictment charged no crime and that no valid judgment could be pronounced against the defendant. See also State v. Riggs, 91 N.J.L. 456 (Sup. Ct. 1918); appeal dismissed 92 N.J.L. 575 (E. & A. 1919). So in the indictment before us, the word divers does not denote definitely three or more, although generally used to indicate at least that number. Yet it can mean only two, and it must be taken with the meaning most favorable to the defendants.
But the State argues that an indictment for inciting need not be as precise as an indictment for the substantive offense of rioting and the State points to the precedent found in 2 Chitty Criminal Law 506. This form charges that the defendant instigated "divers liege subjects of our said lord, the king" to assemble, etc., and that "by means and in pursuance of the said wicked instigations" a great number of people to the number of 100 or more gathered. The second clause amplifies the word divers: In pursuance of what defendant did, 100 or more people gathered. We consider the precedent of somewhat doubtful validity, but even so, it differs essentially from the indictment before us.
An indictment for inciting or procuring a third person to commit a crime must contain a statement of facts which would constitute a crime if performed by the third person. State v. Dudley, 89 N.J.L. 42 (Sup. Ct. 1916). See also State v. Boyd, 87 N.J.L. 560 (E. & A. 1915). "The omission of an essential element cannot be supplied by inference or implication." State v. DeVita, 6 N.J. Super. 344 (App. Div. 1950). In that case, where the indictment *154 charged that defendant solicited a third person to "alter his testimony," we refused to supply, by implication, the element of falsity.
A study of cases dealing with riot discloses that generally the indictment arises from a gathering of persons intent on promoting some political, religious or economic cause,  in most instances, an unpopular one. We must be on our guard not to approve a precedent that might be cited to undermine our constitutional rights of free assembly and free speech.
The order appealed from is reversed and the indictment dismissed.