THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. GABRIEL BOVE, PLAINTIFF IN ERROR.

Submitted December 1, 1921—Decided April 15, 1922.

1. An indictment that charges that defendant through a person acting for and in his behalf, unlawfully did give, barter, sell, &c., certain lottery tickets, and that such person is authorized or directed by the defendant to perform the act complained of, sufficiently charges that such person performed the alleged illegal act under and by direction of defendant.

2. An indictment that charges a sale of "lottery tickets" is sufficient to charge a violation of section 57 of the Crimes act, which forbids the sale of "any ticket or tickets or any share or interest in any ticket or tickets in any lottery."

3. A count in an indictment for sale of lottery tickets, which charges that defendant "did give, barter, sell and dispose of * * * and did deliver and furnish to S.," &c., is not invalid for repugnancy and duplicity, as the words used may all fairly be applied to one act.

4. Where the agent of defendant, to whom he had delivered certain lottery tickets, never gave, bartered nor sold such tickets, the tickets are nevertheless admissible in evidence, as the crime was complete when the tickets passed from the defendant to his agent.

5. An instruction to the jury that if the defendant aided or abetted in the giving, barter, sale, &c., of certain lottery tickets, or participated therein, he was guilty, was correct, as the crime charged was a misdemeanor in the commission of which all are principals.

6. The court instructed the jury that where one charged with crime pleads guilty or *non vult*, and testifies for the state, he has an equitable claim to some consideration by the court in the determination of his sentence if he makes a full and free statement of the whole truth of the transaction. *Held*, not erroneous.

7. When an instruction to the jury contains several distinct propositions, and error is assigned on the entire instruction, plaintiff in error must show that every one of the propositions is erroneous.

8. The charging of the proposition that the jury should consider the testimony of an accomplice with the closest scrutiny, and that they should not convict unless such testimony is corroborated, is discretionary with the court. It is not legally necessary that the testimony of an accomplice should be corroborated.

9. A judgment upon a conviction under a criminal indictment will only be arrested for an error apparent on the face of the record.

On error to the Essex Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the defendant in error, *J. Henry Harrison,* prosecutor of the pleas.

For the plaintiff in error, *Charles Hood.*

The opinion of the court was delivered by

PARKER, J.   This writ of error brings up a conviction of the defendant upon an indictment containing two counts, each of which was based upon the fifty-seventh section of the Crimes act, the material part of which, for present purposes, reads as follows:

"Any person who shall give, barter, sell or otherwise dispose of, or offer to give, barter, sell or otherwise dispose of, any ticket or tickets or any share or interest in any ticket or tickets in any lottery, whether erected, set up, opened or made in this state or elsewhere, or the chance or chances of any such ticket or tickets, &c., shall be guilty of a misdemeanor."

The first count charged that the defendant "through a person acting for and in behalf of said Gabriel Bove, whose name is unknown to the grand jurors, unlawfully did give barter, sell, dispose of to one Robert Simpson, and deliver and furnish to said Robert Simpson, for the purpose of sale and distribution by said Robert Simpson, certain lottery tickets, for the drawing of money prizes on February 28th, 1921, in a lottery, to wit, 'The New Louisiana Lottery,' erected and set up for the drawing, on the 28th day of each month, of money prizes, in the city of Puerto Cortez, Honduras, contrary," &c.

The second count, that the defendant "through a person acting for and in behalf of said Gabriele Bove, whose name is unknown to the grand jurors, unlawfully did deliver and furnish to one Robert Simpson, for the purpose of sale and distribution by said Robert Simpson, certain lottery tickets for the drawing of money prizes on February 28th, 1921, in

a lottery, to wit, 'The New Louisiana Lottery,' erected and set up for the drawing on the 28th day of each month, of money prizes, in the city of Puerto Cortez, Honduras, contrary," &c. There was a general verdict of guilty.

There was a motion to quash the indictment on a number of grounds, which may be gathered up into the propositions that it was vague, indefinite, repugnant and failed to charge the commission of a crime. Under our practice, the action of the court on such motion is discretionary and not ground of legal error, and counsel very properly does not press the denial of the motion except as a basis for raising the same points later on, under section 44 of the Criminal Procedure act. The same points were again urged on a motion in arrest of judgment; and where it is claimed that the indictment fails to charge the commission of a crime, the point may be taken on strict writ of error as an error upon the face of the record. *State* v. *Flynn,* 76 *N. J. L.* 473. So that we proceed to a consideration of the objections to the indictment on the merits.

It is first urged that the indictment fails to allege the commission of a crime, because it says that the defendant, through a person acting for and in behalf of the said defendant, unlawfully did give, barter, sell, &c., and that the indictment does not disclose that such person was authorized or directed by the defendant to perform the acts complained of or consented to their commission, or had knowledge of the commission of said act or acquiesced in it. The real question is whether the language of the indictment is such as to indicate that the unknown person performed the alleged illegal act under and by direction of the defendant, and we think that it is. The evident meaning of the language is that the defendant used another person as his instrumentality, whether conscious or unconscious, to transmit in some way to Simpson the lottery tickets in question for the purposes of sale and distribution. If the defendant directed the unknown person to do it, and the unknown person did this under his direction, of course, the defendant would be responsible, while, if the unknown person was used

as an unconscious instrumentality in some way, as by carrying a sealed package of whose contents he was ignorant, the act, under well-settled principles, would be that of the defendant. If the language was not sufficiently certain to apprise the defendant as to which of these alternatives the state proposed to rely upon, the remedy was by demand for particulars.

The next point is that the indictment fails to charge a crime, because it merely uses the phrase "lottery tickets," but we think this objection is quite unsubstantial. The language of the statute, as we have seen, is "any ticket or tickets or any share or interest in any ticket or tickets in any lottery," and the meaning of the phrase "lottery tickets" is quite well enough understood to indicate that the tickets were of a character within the fifty-seventh section, and denounced as illegal by that section.

The next point is that each of the counts of the indictment is lacking in certainty, because it fails to set forth the number of tickets or the means of identifying the same, or a copy of the tickets, or the name of the person who acted, &c. Conceding that the defendant would be entitled before trial to a specification of these matters, as to which we express no opinion, it does not follow that the defendant was entitled to have them set out on the face of the indictment, and, as in the former case, the specification, if it was the duty of the state to furnish it, should have been by a bill of particulars.

The fourth point is that the first count is bad for repugnancy and duplicity in saying that defendant did give, barter, sell and dispose of * * * and did deliver and furnish to Simpson, &c. The rule of alleging conjunctively the disjunctive variations or phases of a statutory crime is well established. *State* v. *Hill,* 73, *N. J. L.* 77, 78. There may be cases where offences disjunctively set out in a statute are so dissimilar in substance that a separate count for each may be necessary. *Ibid.* In *Larison* v. *State,* 49 *Id.* 256, this condition was said to exist. But this was *obiter dictum,* the decision turning on the proposition that, in any event,

the point was not taken in time. Assuming the correctness of the doctrine intimated in that case, we think its application should be rather carefully limited and not extended.

In the case at bar the words "barter," "sell," "dispose of," "deliver" and "furnish" may all be fairly applied to one act as various phases thereof (which seems to be one of the tests), and we think the word "give" may also be so applied. It is constantly used, for example, as indicating a delivery or passing over. 20 *Cyc.* 1251; *Smith* v. *Burnet*, 35 *N. J. Eq.* 314, 324. We are not required to specify what meaning or meanings the legislature intended to apply to the word as used in the statute here applicable. It is enough to say that for the present purposes the word will bear the meaning of delivery or passing over, and as every reasonable intendment should be in support of the indictment, such meaning will be ascribed to it in this case. There is, therefore, no repugnancy, and, consequently, no duplicity, as the latter must depend on repugnancy for its existence.

The fifth point is that the court erred in allowing certain lottery tickets to be put in evidence. The argument, as we read the brief of plaintiff in error, seems to be that the tickets put in evidence were neither given, bartered nor sold, and the brief quotes the testimony of Simpson that he got this bundle of tickets at the usual place, sorted them out, delivered them to several of his customers, but that he was not paid; that some of the tickets he did not deliver at all; that the sale was countermanded, and, consequently, as we infer, Simpson never completed the sale of any of this group of tickets. But we do not see what this has to do with the charge that the defendant, through the agency indicated in the indictment, furnished or delivered, &c., to Simpson, the tickets for purposes of sale and distribution. It seems quite immaterial what Simpson did with the tickets after he got them. The crime was complete when the tickets passed from the defendant to Simpson.

It is further argued that the court erred in instructing the jury that if the defendant aided or abetted in the giving, barter, sale or disposition of the tickets, or participated

therein, he is guilty. This point relates to the tenth, eleventh and twelfth assignments of error. The court seems merely to have applied the elementary legal rule that in misdemeanors all are principals, and this being denounced by the statute as a misdemeanor only, the instructions in question were not erroneous.

The next point is based upon the thirteenth assignment of error, that the court instructed the jury as follows:

"Now, it is true that where one charged with crime pleads guilty or *non vult,* and then testifies for the state, he has an equitable claim upon the court to some consideration in the determination of his sentence, but it should be borne in mind that he does not become so entitled unless he makes a full and free statement of the whole truth, and any grant of such consideration is necessarily based upon the assumption that such persons fairly, fully and frankly testified to the truth of the transaction in issue.

"Simpson and Jasitis, as has been pointed out by counsel for the defendant, are within this rule of practice. Have they, then, testified fully, fairly and frankly to the whole truth, so as to be entitled to this consideration? And, if not, of course, they have no equitable claim to consideration in their sentence."

We are unable to find any legal error in these instructions, but, if such error exist, it has not been pointed out in the manner required by the practice. The instruction contains several distinct propositions—first, that where one charged with crime pleads guilty or *non vult,* and then testifies for the state, he has an equitable claim for consideration: second, that such claim, however, does not exist unless he makes a full and free statement of the truth; third, that the witnesses Simpson and Jasitis are within that rule; fourth, that if not, then no equitable claim for consideration. If the plaintiff in error is to succeed on this assignment, he must show that every one of these propositions is erroneous under well-settled rules of practice, and it seems quite clear that they are not all erroneous, and we are inclined to think that none of them is erroneous.

The next point is that the court erred in refusing to charge certain requests relating to the testimony of accomplices, which need not be quoted *in extenso,* but the general effect of which is that the jury should consider such testimony with the closest scrutiny, and that there should not be a conviction unless the jury can find corroboration somewhere in the other evidence. The answer to this is that the charging of such requests is discretionary with the court. *State* v. *Hyer,* 39 *N. J. L.* 598. And as to the legal necessity of corroboration, the rule is that it is not legally necessary, and has been so decided in a number of cases, many of them recent. See, for example, *State* v. *Bien,* 95 *Id.* 474.

The last point is that there should have been an arrest of judgment for various reasons already discussed. Apart from the discussion of the merits of these reasons, the rule is, of course, fundamental that judgment will not be arrested for any error except one which is apparent on the face of the record, and many of the reasons are not of this class. As to those which are embraced within the rule, they have already been considered and disposed of.

The judgment will therefore be affirmed.